## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| WILLIAM H. MORGAN III, by and through WILLIAM H. MORGAN IV, next of friend and attorney-in-fact, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) | Case No. CIV-22-316-F |
| JUSTIN BROWN, DIRECTOR OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES; KEVIN CORBETT, CHIEF EXECUTIVE OFFICER OF OKLAHOMA HEALTH CARE AUTHORITY,[1] | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Plaintiff William H. Morgan III, by and through William H. Morgan IV, next friend and attorney-in-fact, brings this action, under 42 U.S.C. § 1983, against defendants, Justin Brown, director of the Oklahoma Department of Human Services and Kevin Corbett, chief executive officer of the Oklahoma Health Care Authority, seeking declaratory and injunctive relief that plaintiff is eligible for Medicaid benefits.  Presently before the court is plaintiff's motion for preliminary injunction. Doc. no. 2.  Plaintiff requests a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P., directing the defendants to place him in Medicaid pay status for the pendency

---

[1] Based on defendants' representations, see, doc. no. 12, n. 1, the court, pursuant to Rule 21, Fed. R. Civ. P., *sua sponte*, drops Melody Anthony, Director of Oklahoma Health Care Authority, as defendant and adds Kevin Corbett, chief executive officer of Oklahoma Health Care Authority as defendant.

of this action, along with all other relief the court deems just and equitable. Defendants have responded, opposing preliminary injunctive relief. Doc. no. 12. Plaintiff has replied. Doc. no. 13. For the reasons stated below, plaintiff's motion is denied.

I. Factual Background

William H. Morgan III (Morgan) is an 88-year-old resident of the Community Health Center located in Wakita, Oklahoma. He was admitted to the nursing facility in February of 2015.[2] Several months prior to his admission, Morgan executed a Durable Power of Attorney, naming his son, William H. Morgan IV, as his attorney-in-fact.

On January 6, 2016, Morgan transferred all his assets, except for his checking account, to Gayle Warren (Warren) in exchange for a promissory note in the amount of $401,000.00. The amount of Morgan's assets totaled $397,874.10. The transferred assets included Morgan's home valued at $225,000, mineral rights valued at $84,000, and cash in the amount of $88,874.10. Warren executed a replacement promissory note on March 9, 2016 (2016 note), which called for six annual installments of $70,337.68, commencing on March 9, 2017. Upon default, the entire unpaid principal balance was to bear interest at a specified rate per annum.

Morgan applied for receipt of Medicaid benefits for nursing home care. On June 13, 2016, the Oklahoma Department of Human Services (DHS)[3] approved

---

[2] According to DHS, a Uniform Comprehensive Assessment Tool III was performed on Morgan on January 26, 2016, which determined that Morgan's cognitive function was high risk with a three-year history of dementia. Doc. no. 1-12.

[3] The Oklahoma Health Care Authority administers the Medicaid Program, but it has delegated eligibility determinations to the Department of Human Services. *See*, 63 O.S. § 5009, amended by 2022 Okla. Sess. Law Serv. Ch. 395 (S.B. 1337); 42 C.F.R. § 431.10.

Morgan's application for Medicaid benefits, with an effective date of March 9, 2016.[4]

Prior to and ending March 9, 2017, Warren paid Morgan the first payment due under 2016 note.[5]  On March 15, 2017, Morgan loaned $55,500 to Warren in exchange for a promissory note.  Warren executed a replacement note (2017 note) which called for six annual installments of $9,924.91, commencing on March 15, 2018.  Upon default, the entire unpaid principal balance was to bear interest at a specified rate per annum.

On April 14, 2017, DHS issued a notice of closure, advising Morgan that his Medicaid benefits would end on May 1, 2017, because it determined the 2017 note represented a $55,500 transfer since it did not meet all the requirements to make it exempt.  In addition, it determined the execution of the 2017 note constituted a deferral of the amount due by Warren under the terms of the 2016 note or in the alternative, the payment/note transaction could be viewed as no payment of all.  DHS concluded that Warren had placed the 2016 note in default and the 2016 note constituted a countable resource for determining Medicaid eligibility.  After receipt of new information from Morgan, DHS issued a revised notice of closure, advising that there was no change to the May 1, 2017 closure date.  DHS concluded the principal balance of the 2016 note, totaling $391,897.10, was a countable resource to Morgan for determining Medicaid eligibility.

Morgan challenged the revised notice of closure by filing a request for a fair hearing.  An administrative law judge found DHS acted correctly and properly

---

[4] In his complaint, Morgan alleges that DHS, in approving Morgan's eligibility for Medicaid benefits, ruled the 2016 note satisfied the requirements of 42 U.S.C. § 1396p(c)(1)(I).  That provision excludes funds used to purchase a promissory note as "assets" if the promissory note satisfies certain requirements.

[5] According to DHS, Warren gave documentation of payments under the 2016 note totaling $15,037.70, and on March 9, 2017, she deposited $55,300 to Morgan's bank account.

closed Morgan's case, concluding the execution of the 2017 note constituted a deferral of the 2016 note and placing the 2016 note in default, thus making Morgan ineligible for Medicaid benefits.  The record indicates that finding was affirmed by a designee of DHS and then by the District Court of Grant County, Oklahoma in 2018.

On January 11, 2021, Morgan reapplied for Medicaid benefits.  DHS denied Morgan's application on April 27, 2021, claiming he had transferred $266,000 in assets without receiving fair market value for them.  DHS determined that the $266,000 was the amount owed by Warren on both promissory notes in 2020 and 2021, which had not been paid by her, and those non-payments constituted a transfer of resources without commensurate return.  DHS also imposed a penalty from January 12, 2021 through February 1, 2025 as to eligibility for Medicaid benefits. Morgan appealed.  On November 24, 2021, an administrative law judge granted summary judgment in favor of DHS, finding that DHS correctly determined Morgan was ineligible for Medicaid benefits based on the transfer of available resources for less than fair market value within 60 months prior to his January 11, 2021 application, due to the failure to enforce or collect payments due on the promissory notes and the prior findings of improper deferral and non-bona fide status of the promissory notes.

In a letter dated April 5, 2022, Community Health Center advised Morgan's attorney-in-fact that Morgan would be discharged from the nursing facility on May 6, 2022, as Morgan's account had an outstanding balance of $66,808.05 as of April 1, 2022.

Shortly thereafter, Morgan commenced this action under 42 U.S.C. § 1983, claiming DHS's determinations regarding his January 11, 2021 application contradict federal law, specifically, the Medicaid Act, 42 U.S.C. § 1396, *et seq*.

II. <u>Analysis</u>

A. <u>Preliminary Injunction Standard</u>

"A preliminary injunction is 'an extraordinary remedy never awarded as of right[.]'" <u>Harmon v. City of Norman, Oklahoma</u>, 981 F.3d 1141, 1146 (10th Cir. 2020) (quoting <u>Benisek v. Lamone</u>, 138 S.Ct. 1942 (2018), quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008)).  "[I]t is 'the exception rather than the rule[.]'"  <u>Id</u>. (quoting <u>United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.</u>, 883 F.2d 886, 888 (10th Cir. 1989)).  To obtain a preliminary injunction, Morgan must show four factors weigh in his favor: "'(1) [he] is substantially likely to succeed on the merits; (2) [he] will suffer irreparable injury if the injunction is denied; (3) [his] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" <u>Awad v. Ziriax</u>, 670 F.3d 1111, 1125 (10th Cir. 2012) (quoting <u>Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC</u>, 562 F.3d 1067, 1070 (10th Cir. 2009)).

Under Tenth Circuit precedent, some preliminary injunctions are disfavored and require a strong showing by the movant.  These include "'(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'"  <u>Awad</u>, 670 F.3d at 1125 (quoting <u>Summum v. Pleasant Grove City</u>, 483 F.3d 1044, 1048-49 (10th Cir. 2007), *rev'd on other grounds*, 555 U.S. 460 (2009)).   In seeking such injunction, the movant must "'make[] a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms.'" <u>Beltronics USA, Inc.</u>, 562 F.3d at 1071 (quoting <u>O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft</u>, 389 F.3d 973, 976 (10th Cir. 2004) (en banc)).

Morgan requests a preliminary injunction that directs the defendants to place him in Medicaid pay status for the pendency of this action.  Because this injunction would alter the status quo[6] between the parties, the court concludes it is a disfavored injunction requiring Morgan to make the required strong showing.

B. <u>Substantial Likelihood of Success on the Merits</u>

To show a substantial likelihood of success on the merits, plaintiff has "'to make a prima facie case showing a reasonable probability that [he] will ultimately be entitled to the relief sought.'"  <u>Norman</u>, 981 F.3d at 1146 (quoting <u>Automated Mktg. Sys., Inc. v. Martin</u>, 467 F.2d 1181, 1183 (10th Cir. 1972)).

Morgan argues that the defendants are violating his federal rights by denying him benefits under the provisions of 42 U.S.C. § 1396p(c)(1)(A) and § 1396p(c)(1)(B).  Under the Medicaid Act, states are charged with imposing penalty periods of Medicaid non-eligibility when an institutionalized individual "disposes of assets for less than fair market value on or after the look-back date."  42 U.S.C. § 1396(c)(1)(A).  According to § 1396p(c)(1)(B), the look-back date is 60 months before "the first date as of which the individual both is an institutionalized individual and has applied for" Medicaid benefits.  42 U.S.C. § 1396p(c)(1)(B)(i) and (ii).

According to Morgan, 20 C.F.R. § 416.1246 defines "disposes of assets" in § 1396(c)(1)(A) as "gives away or sells" assets.  Morgan points out that the plain meaning of the term, "give," according to <u>Black's Law Dictionary</u>, is "[t]o transfer ownership or possession without compensation" or to "bestow upon another gratuitously or without consideration."  Doc. no. 2, p. 9 (quoting <u>Black's Law Dictionary</u>, 6th Ed., p. 689).  He asserts that the term "transfer" is defined as "[t]o convey or remove from one place, person, etc., to another; pass or hand over from

---

[6] "An injunction disrupts the status quo when it changes the 'last peaceable uncontested status existing between the parties before the dispute developed.'"  <u>Beltronics USA, Inc.</u>, 562 F.3d at 1070-71 (quoting <u>Schrier v. Univ. of Colo.</u>, 427 F.3d 1253, 1260 (10th Cir. 2005)).

one to another; specifically to change over the possession or control of (as, to transfer a title to land).  To sell or give." *Id*. (quoting <u>Black's Law Dictionary</u>, 6th Ed., p. 1497).  Additionally, he argues that the term "bestow" is defined as "[t]o give, grant, confer, or impart; not necessarily limited in meaning to devise." *Id.* (quoting <u>Black's Law Dictionary</u>, 6th Ed. p. 161).

Morgan asserts that he sold all his assets on January 6, 2016, more than 60 months before he filed his January 11, 2021 application.  And he maintains that neither he nor anyone on his behalf gave away or sold any assets to the present date. Morgan maintains that the only asset he owned after January 6, 2016 was his checking account, having a balance less than $2,000, and all transfers from that account were for his benefit.  Although the defendants allege a transfer occurred when Warren failed to make payments to him under the promissory notes, Morgan contends that the failure of Warren to make those payments does not amount to giving away or selling assets.  Morgan contends that neither he nor anyone on his behalf, transferred or bestowed, as those terms are defined by <u>Black's Law Dictionary</u>, any assets after January 6, 2016.

Further, relying on POMS[7] SI 01150.001 defining a resource transfer, Morgan contends that he must have "own[ed]" the asset prior to it being transferred.  Morgan asserts the only assets he owned were the ones he transferred on January 6, 2016, outside the 60-month look-back period for his January 11, 2021 application.

The defendants do not address Morgan's specific arguments regarding the definition of "disposes of assets" for purposes of § 1396(c)(1)(A) or the requirement of "own[ing]" assets prior to their transfer.  The defendants assert that because the

_____

[7] Program Operations Manual System.  POMS are a set of policies issued by the Social Security Administration, which are deferred to unless determined to be "arbitrary, capricious, or contrary to law." <u>Ramey v. Reinertson</u>, 268 F.3d 955, 964 n. 2 (10th Cir. 2001) (quotation marks and citation omitted).

January 11, 2021 application was denied and the denial was upheld by the administrative law judge, it "should not be subject to review" by this court because "[t]hat matter is res judicata." Doc. no. 12, p. 5. The court declines to address this assertion since it is not developed, and the defendants cite no legal authority to support it. *See*, Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005) ("[I]ssues will be deemed waived if they are not adequately briefed.") (quotation marks and citation omitted). The defendants make other assertions,[8] which the court need not address in light of its conclusion, as discussed below, that Morgan has not made a strong showing, based on the arguments raised in his motion, of a substantial likelihood of success on the merits.

The court rejects Morgan's arguments that he did not "dispos[e] of assets" within the 60 month look-back period as determined by the defendants. The argument, relying upon POMS SI 01150.001, that Morgan had to have "owned" an asset in order to have made a transfer, *see*, doc. no. 2, p. 10, is contrary to the definition of "assets" as set forth in 42 U.S.C. § 1396p(h). Morgan does not proffer a definition of "owned," but his briefing suggests that it means possession. But section 1296p(h) defines "assets" to include "all income and resources of the individual . . ., including any income or resources which the individual . . . *is entitled to but does not receive* because of action—by a person . . . with legal authority to act in place of or one behalf of the individual . . . ." 42 U.S.C. § 1396p(h) (emphasis added). The statutory language indicates that assets may include income and resources that are not in the possession of the individual. Morgan does not challenge DHS's position that Warren did not make payments under the promissory notes which were due in 2020 and 2021. He also does not challenge DHS's position that

---

[8] One of those assertions is that a transfer of assets occurred during the 60-month look-back period when Morgan transferred $55,500 to Warren in exchange for the 2017 note in March of 2017.

he was legally entitled to enforce those payments or collect those payments upon Warren's default.

At the administrative level, Morgan argued that the failure to enforce the right to collect Warren's payments was not an "action" as contemplated by § 1396p(h).[9] He argued such failure constituted "inaction" which the statute does not address. The court, however, agrees with the Supreme Court of the State of Wisconsin in <u>Tannler v. Wisconsin Dept. of Health and Social Services</u>, 211 Wis.2d 179, 188-89 (1997), that the term "action" may include a refusal to take action to receive income or resources to which one is entitled.  Although Tannler involved a failure to make an election against a community spouse's estate, the court concludes that Morgan's failure to enforce or collect payments due under the promissory notes that Morgan was legally entitled to would also result in a conscious act and constitute an action for purposes of the statute.  *Id*. at 189.  Aside from that, a *decision* to forego filing suit is "action."

As discussed by the <u>Tannler</u> court, section 3257(3) of the Centers for Medicare and Medicaid Services, United States Department of Health and Human Services, <u>State Medicaid Manual</u>, lists as examples of actions that would cause income or resources not to be received:

- Irrevocably waiving pension income;
- Waiving the right to receive an inheritance;
- Not accepting or accessing injury settlements;
- Tort settlements which are diverted by the defendant into a trust or similar device to be held for the benefit of an individual who is a plaintiff; and

---

[9] In his complaint, Morgan also refers to § 1396p(h) and alleges that no action was taken by him or by anyone on his behalf to prevent receipt of income or resources.

- Refusal to take legal action to obtain a court ordered payment that is not being paid, such as child support or alimony.

State Medicaid Manual, Section 3257(3).  These actions include an inaction or a refusal to act.  Although the State Medicaid Manual does not have the force and effect of law, the court concludes that it is appropriate to defer to it.  *See*, Morris v. Oklahoma Dept. of Human Services, 685 F.3d 925, 931 (10th Cir. 2012).  Section 3257(3) is consistent with the purposes of the federal statute, and in the court's view, provides a reasonable interpretation of it.  *Id*.  Consequently, the court concludes that the failure to enforce or collect payments under the promissory notes is an action under § 1396p(h).

With respect to Morgan's argument that he did not "dispose of" any assets because he did not "give[] away" any assets, the court concludes Morgan's action could (and, as a matter of practical economic reality, would) be considered as a disposal of assets.  Assuming without deciding that the court should use Morgan's definition of "give" for defining "dispose of," the court concludes that a lender's failure to enforce or collect payments due under a promissory note bestows those payments, or the funds they represent, upon the borrower gratuitously or without consideration.

Aside from the arguments addressed here, Morgan, in his motion, does not address or develop any specific argument to counter DHS's position that the uncollected payments were resources attributable to Morgan.  In reply, Morgan posits that the promissory notes are not resources under the Tenth Circuit's decisions in Rose as next friend of Rose v. Brown, 14 F.4th 1129 (10th Cir. 2021) and Gragert v. Lake, 541 Fed. Appx. 853 (10th Cir. 2013), because the promissory notes contained an anti-assignment clause and were thus non-transferable.  However, the court notes that Morgan does not address DHS's position that the promissory notes

were not bona fide.  *See*, <u>Rose</u>, 14 F.4th at 1138 (a bona fide nontransferable promissory note would not be a resource) (citing POMS SI § 1120.220(C)(2)(c)).[10]

Upon review, the court concludes that Morgan has not made a strong showing of the likelihood of success on the merits.  Morgan has not made a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought.  Because Morgan cannot satisfy the substantial likelihood of success on the merits requirement, the court need not address whether Morgan can satisfy the other factors.  The court concludes that Morgan's motion for preliminary injunction should be denied.

III. <u>Conclusion</u>

Accordingly, Plaintiff's Motion for Preliminary Injunction (doc. no. 2) is **DENIED**.

IT IS SO ORDERED this 5th day of July, 2022.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

22-0316p003 rev _.docx

---

[10] The court notes that in his complaint, Morgan alleges that the promissory notes are not available resources because they meet the requirements of 42 U.S.C. § 1396p(c)(1)(I) and that under 42 U.S.C. § 1396p(c)(2)(C) that an individual is not ineligible for Medicaid benefits if he intended to dispose of the assets at fair market value, or for other valuable consideration.  He does not present any arguments in his motion with respect to these allegations.